**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Roy Dale FORSHEE,
Defendant-Appellant.**

No. 14310.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 15, 1986.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Dec. 29, 1986.

Application to Transfer Denied
Feb. 17, 1987.

William L. Webster, Atty. Gen., Paul La-Rose, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Holy G. Simons, Columbia, for defendant-appellant.

GREENE, Presiding Judge.

After jury trial, Roy Dale Forshee was found guilty of first degree robbery, first degree burglary, and two counts of armed criminal action. The trial court, after finding Forshee to be a prior and persistent offender, due to prior felony convictions, sentenced him to imprisonment terms of 25 years for robbery, 25 years for burglary, and 10 years on each of the armed criminal action charges, for a total of 70 years, with the sentences to run consecutively.

On appeal, Forshee contends, in his three points relied on, that the trial court erred in 1) excluding the testimony of a defense witness, 2) failing to declare a mistrial when a juror declared that he was acquainted with the defendant and some of his witnesses, and 3) in assessing cumulative sentences totaling 70 years, in violation of the defendant's constitutional rights.

None of these complaints were preserved for appellate review, in that they were not raised by objection or motion at trial and, in the case of points two and three, were not asserted by Forshee in his motion for new trial. *State v. McCowan*, 636 S.W.2d 354, 356 (Mo.App.1982); *State v. Walker*, 629 S.W.2d 558, 559 (Mo.App. 1981). We review, ex gratia, for plain error, under Rule 30.20,[1] by reason of the relative severity of the sentences. In such review, we examine the record in connection with the matters raised in Forshee's brief to determine whether trial court error affecting Forshee's rights resulted in manifest injustice. On this issue, Forshee has the burden of proof. *State v. Davis*, 677 S.W.2d 370, 372 (Mo.App.1984).

The sufficiency of the evidence to sustain the convictions is not questioned on appeal. It suffices to say that evidence was introduced at trial from which the jury could have found, beyond a reasonable doubt, that, on January 13, 1984, Forshee unlawfully entered the home of Kermit and Joan Pyatt, located near St. James, Missouri, for the purpose of committing a robbery and, that through threatened use of a pistol, Forshee seized Mrs. Pyatt, handcuffed her to the fireplace, forced her to tell him the location of family jewelry and, after she did so, stole the jewelry consisting of watches, rings, etc., Mrs. Pyatt's wallet containing approximately $100, and a pickup truck belonging to the Pyatts.

In regard to Forshee's first point relied on, he contends the trial court erred in refusing to let him use Norman Heironimus as a defense witness. Heironimus attended the trial, and was in the courtroom during the testimony of Mrs. Pyatt.

After the robbery, Mrs. Pyatt had told the police that her assailant was 5'5" to 5'6" tall, weighing approximately 130 pounds. Later, after Forshee had been arrested on suspicion of the crimes in question, Mrs. Pyatt picked him from a police lineup as the person who had robbed her. At that time, Forshee was weighed and measured and found to be 5'7" tall and weighed 150 pounds. When asked to explain the discrepancy in weight between her report and Forshee's weight and appearance at time of trial, Mrs. Pyatt said he appeared heavier at time of trial. Later, the following conversation occurred:

MR. PEARSON (attorney for Forshee): I have a rebuttal witness who has been sitting in the courtroom. I would ask the Court to exclude him at this time and

[1.] All references to rules are to Missouri Rules of Court, V.A.M.R.

allow me to bring him during my case in chief.

THE COURT: Who is the rebuttal witness?

MR. PEARSON: It is Reverend Heironimus. His testimony will concern gaining weight. I did not expect Mrs. Pyatt to say that Mr. Forshee gained weight at this time.

THE COURT: The Court knows Mr. Heironimus and he has been sitting in this courtroom during the entire trial but we'll cross that bridge when we come to it.

Later, during presentation of defense testimony, in their case in chief, the following proceedings occurred:

THE COURT: Who is your next witness?

MR. PEARSON: Call Reverend Heironimus.

MR. HOWALD: May we approach the bench?

THE COURT: Yes you may.

(The following proceedings were had at the bench out of the hearing of the jury.)

MR. HOWALD: I'm going to object to Mr. Pearson calling this witness. This witness wasn't disclosed to me by Mr. Pearson, and in addition, this witness was present in the courtroom during the testimony in part of the State's case and the rule on witnesses had been invoked.

MR. PEARSON: Your Honor, I'm only bringing this witness to rebut one point that Joan Pyatt made. This was a complete surprise to me. If I had known about it I would have called him in and had him sequestered with the other witnesses.

THE COURT: State the witness' name again.

MR. PEARSON: Norman Heironimus.

THE COURT: This Court is personally acquainted with this witness that you've called and the Court knows that he sat in this courtroom at least two hours this morning during the trial of this case.

MR. PEARSON: Very well, your Honor.

THE COURT: And you, Mr. Pearson, asked that the rule on witnesses be invoked.

MR. PEARSON: That's true.

THE COURT: In addition, Mr. Howald states that you did not disclose him as a witness.

MR. PEARSON: I did not.

THE COURT: The objection of the State is sustained.

There is nothing in the record to show what Heironimus would have said, if he had been allowed to testify, or how such testimony would have rebutted that of Mrs. Pyatt.

■ When a prospective witness is precluded from testifying, the proper procedure is for the person protesting such exclusion to preserve the anticipated evidence by an offer of proof in the form of questions and answers, or a summation by counsel of the proposed testimony, which should also demonstrate why such testimony was admissible. *State v. Bullington,* 680 S.W.2d 238, 243 (Mo.App.1984). Since no such offer was made in this case, we would have to speculate on what the testimony would have been, and why its exclusion was prejudicial. This we cannot do.

In addition, the jury had before it the testimony of Morris Woodall who testified that he had regularly visited with Forshee in the Crawford County jail since Forshee had been arrested, and that it did not appear to Woodall that Forshee had gained any weight during his three or four months of confinement before trial.

■ Even if we were to assume that the testimony of Heironimus would have corroborated that of Woodall, on the weight issue, we have no assurance the jury would have believed it or, if they did, considered that it affected the credibility of Mrs. Pyatt who, incidentally, picked Forshee from the lineup, without hesitation, as the person who had robbed her. Under the facts, there was no abuse of discretion on the part of the trial court in refusing to allow the witness to testify. *State v. Lupo,* 676

S.W.2d 30, 33 (Mo.App.1984). The point is denied.

In his next point relied on, Forshee claims that the trial court erred in "failing to declare a mistrial, or at a minimum inquiring further, when a juror informed the court that he was acquainted with both the appellant and appellant's witnesses, and did not feel qualified to sit as a juror...."

During voir dire examination, the entire jury panel was asked by the prosecutor if they knew, or were related to, among others, Forshee, Charles Reynolds, or Carol Reynolds. None of the prospective jurors indicated that they did. After completion of voir dire, James Woodcock was selected as one of the 12 jurors to try the case. After Carol Reynolds completed her testimony, the following proceedings occurred:

JUROR WOODCOCK: Could I talk to you in private?

THE COURT: You stay here just a minute, Mr. Woodcock. Let's clear the courtroom please. Mr. Woodcock, we can't discuss this case with you.

JUROR WOODCOCK: These two lawyers here asked me if I knowed any witnesses or anything. I do know them people.

THE COURT: Did you know that at the time?

JUROR WOODCOCK: No sir, I didn't recognize them until they come on the stand.

THE COURT: That's fine, I appreciate you telling me that, Mr. Woodcock.

JUROR WOODCOCK: I can't place if it's in Sullivan or St. Louis. I know they used to come in my tavern frequently and I know I know Roy from somewhere and I just can't place where. It's been a long time and he looks older. But I know I know them.

THE COURT: The Court understands now why you wanted to ask a question.

JUROR WOODCOCK: I'm positive maybe I wasn't qualified for this.

THE COURT: Mr. Woodcock, the fact that you know the witness does not disqualify you. The Court doesn't believe that you have done anything that you shouldn't do, Mr. Woodcock, and we appreciate what you've said.

MR. HOWALD: I appreciate the fact that he has told us about that. I don't have any objection.

THE COURT: When you first spoke I thought maybe you wanted to ask the witness a question and you can't do that.

JUROR WOODCOCK: No, I know not that.

■ There is nothing in the record to indicate that Woodcock was, in any way, prejudiced against Forshee or his witnesses, or was guilty of intentionally concealing the fact that he knew them. The mere fact that a juror knows a party to a lawsuit, or his witnesses, is not grounds for reversal. *State v. Mitchell*, 651 S.W.2d 637, 639 (Mo. App.1983). *See also State v. Mullen*, 528 S.W.2d 517, 521 (Mo.App.1975).

Forshee has failed to meet his burden of demonstrating any trial court error on this issue, or that manifest injustice resulted because of any unilateral lack of action on the part of the trial court after Woodcock made his disclosure. *State v. Groves*, 646 S.W.2d 82, 83 (Mo. banc 1983). The point is denied.

Forshee's final point is that his cumulative sentences totalling 70 years constitutes cruel and unusual punishment, in violation of his constitutional rights.

■ The decision to run sentences consecutively or concurrently, for multiple offenses, is vested in the sound discretion of the trial judge. *State v. Treadway*, 558 S.W.2d 646, 653 (Mo. banc 1977). Here, the trial court properly found Forshee to be a prior and persistent offender because of prior felony convictions of second degree assault and carrying a concealed weapon, plus a Florida conviction for assault, and a California conviction for fraud. The punishment assessed for each of the four crimes was within the statutory limits, and the consecutive effect of the sentences does not constitute cruel and unusual punishment. *State v. Repp*, 603 S.W.2d 569, 571 (Mo. banc 1980).

Considering the fact that Forshee terrorized Mrs. Pyatt by means of a deadly weapon, violated her home, confined her with handcuffs, stole her wallet and her and her husband's jewelry, and drove away in the Pyatt's pickup truck, coupled with the fact that he had been to the criminal wall on at least four prior occasions, the 70-year sentence is appropriate. The point is denied.

Judgment affirmed.

CROW, C.J., and SEIER, Special Judge, concur.